**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WILDEARTH GUARDIANS
301 N. Guadalupe St., Suite 201
Santa Fe, NM 87501

Plaintiff,

vs.

DOUG BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

BRIAN NESVIK, in his official capacity as Director of U.S. Fish and Wildlife Service
1849 C Street, N.W.
Washington D.C., 20240

*and*

UNITED STATES FISH AND WILDLIFE SERVICE,
1849 C Street, N.W.
Washington, D.C. 20240

Defendants.

Civil Action No. 1:26-cv-3215

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1. Plaintiff WildEarth Guardians (Guardians) challenges the U.S. Fish and Wildlife Service's (the Service) failure to issue a final listing rule for the critically imperiled regal fritillary – a large, nonmigratory butterfly once common to our nation's tallgrass prairie habitats – in violation of the Endangered Species Act's (ESA) mandatory deadline for issuing a final listing determination

within one year after publication of a proposed listing rule. 16 U.S.C § 1533(b)(6)(A).



*Photo Credit: Pennsylvania Army National Guard*

2. Similar in size and coloration to the monarch butterfly, but distinguished by its predominantly orange forewings and dark hindwings, the regal fritillary was once so emblematic of the American grasslands that it was described as "probably about as characteristic of tallgrass prairie as bison and far more abundant." (NatureServe 2021, entire). However, the Service's Central Grassland Conservation Initiative estimates that since the late 1800s, 99% of the fritillary's native tall-grass prairie habitat has been lost, largely due to cropland conversion. Today, the species has been relegated to small, isolated fragments of degraded habitat, with conditions expected to worsen over the coming years from climate change-driven droughts.

3. The ESA sets out a nondiscretionary timeline for the Service to make the now-

overdue final listing determination, and the Service's failure to meet the deadline delays crucial protections for the regal fritillary, increasing the risk of its extinction. Guardians bring this lawsuit for declaratory and injunctive relief, seeking an order declaring that the Service violated section 4(b)(6)(A) of the ESA, 16 U.S.C. § 1533(b)(6)(A), by failing to timely issue a final listing rule for the regal fritillary and directing the Service to issue the final rule by a certain date.

## JURISDICTION

4. This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c), (g) (ESA citizen suit provision), which waives the Defendants' sovereign immunity, and 28 U.S.C. § 1331 (federal question). This Court has the authority to issue declaratory and injunctive relief. 16 U.S.C. § 1540(g); 28 U.S.C. §§ 2201–2202; 5 U.S.C. § 706.

5. Guardians provided Defendants with 60 days' notice of the ESA violation alleged in this complaint, as required by 16 U.S.C. § 1540(g)(2)(C), by a letter sent to the Secretary of the Interior, Doug Burgum, and the Service's Director, Brian Nesvik, via certified mail that was received on June 18, 2026. The Defendants have not remedied the violations set out in the notice, and an actual controversy exists between the parties.

6. Venue is proper in this Court under 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e) because Defendants reside in the district and a substantial part of the events giving rise to Guardians' claims occurred in this district.

## PARTIES

7. Defendant U.S. FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior charged with implementing the ESA for terrestrial species like the regal

fritillary. The Secretary of the Interior has delegated administration of the ESA to the U.S. Fish and Wildlife Service. 50 C.F.R. § 402.01(b).

8. Defendant BRIAN NESVIK is the Director of the U.S. Fish and Wildlife Service and is charged with ensuring that agency decisions comply with the ESA. Defendant Nesvik is sued in his official capacity.

9. Defendant DOUG BURGUM is the Secretary of the U.S. Department of the Interior and has the ultimate responsibility to administer and implement the relevant provisions of the ESA. Defendant Burgum is sued in his official capacity.

10. The three defendants listed above are collectively referred to in the remainder of this complaint as "the Service."

11. Plaintiff WILDEARTH GUARDIANS is a nonprofit conservation organization dedicated to protecting and restoring the wildlife, wild places, wild rivers, and health of the American West. Guardians has over 209,000 members and supporters nationwide, many of whom have a strong interest in conserving native pollinators like the regal fritillary and their American tall-grass prairie habitats.

12. Guardians bring this action on behalf of their staff and members who derive ecological, recreational, aesthetic, educational, scientific, professional, and other benefits from this species and their habitats. As a multitude of threats continue to push the regal fritillary toward extinction, Guardians' members' interests in protecting and recovering the species and its habitat are directly harmed by the Service's failure to issue timely findings.

13. Guardians has an active endangered species protection campaign, with a geographical focus on flora and fauna endemic to the Western United States. Guardians'

endangered species protection efforts have focused on species like pollinators that benefit entire ecosystems, as well as key indicator species that demonstrate the health of larger ecosystems. As part of this campaign, Guardians has repeatedly urged the Secretary to list imperiled species that require ESA protection. Guardians first petitioned the Service to protect the regal fritillary on April 19, 2013, requesting that the Service list both the eastern and western regal fritillary subspecies under the ESA. Guardians also helped prepare timely comments in response to the Service's 2024 proposed rule to list the eastern regal fritillary as endangered and the western regal fritillary as threatened with a species-specific section 4(d) rule. *Endangered Status for the Eastern Regal Fritillary, and Threatened Species Status with Section 4(d) Rule for the Western Regal Fritillary* 89 Fed. Reg. 63888 (August 6, 2024) (hereinafter, "Proposed Listing Rule for the Regal Fritillary").

14. The Service's violation of the ESA's nondiscretionary mandatory deadline for issuing a final listing determination has delayed ESA protections for the regal fritillary. Guardians' members regularly visit and enjoy areas within the species' current and historical range and have concrete plans to continue doing so. Some members desire to observe regal fritillaries in currently occupied habitat, while others visit historically occupied prairie habitat and have a concrete interest in the species' recovery and eventual return to areas from which it has disappeared. The Service's delay in extending ESA protections to the regal fritillary diminishes the prospects for the species' conservation and recovery, including its eventual return to portions of its historical range, thereby harming members' interests in observing and enjoying the species and the ecosystems of which it is a part.

15. These injuries are actual, concrete, and presently suffered by the Guardians' members. Furthermore, these injuries are directly caused by the Defendants' acts and omissions,

and will continue unless the Court grants relief. The relief sought would redress these injuries by providing a concrete, enforceable timeline for the Service to make a listing decision that would either apply ESA protections or, potentially, deny them, which Guardians could challenge in court as a final agency action. The Service's current, open-ended inaction provides neither the benefits of listing nor the opportunity to address a final denial with the court's involvement. Guardians and its members have no other adequate remedy at law.

## STATUTORY FRAMEWORK

16. The ESA is comprehensive legislation that recognizes endangered and threatened species are of "esthetic, ecological, historical, recreational, and scientific value to the nation and its people. 16 U.S.C. § 1531(a)(3). The ESA aims "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species." *Id.* § 1531(b).

17. The ESA has a suite of substantive and procedural legal protections that apply to species once they are listed as endangered or threatened. For example, Section 4 of the ESA requires the Service, to the maximum extent prudent and determinable, to designate "critical habitat" for each endangered and threatened species. *Id.* § 1533(a)(3). Section 7 requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any endangered or threatened species or "result in the destruction or adverse modification" of any listed species' critical habitat. *Id.* §1536(a)(2). Section 9 prohibits the unauthorized 'take'—i.e., killing, injuring, harming, etc.—of endangered wildlife, 16 U.S.C. §§ 1538(a)(1), 1539 and Section 4(d) authorizes the Service to extend appropriate protective regulations to threatened species, *id.* § 1533(d); *see also id.* § 1532(19) (defining "take"). Other provisions require the Service to "develop

and implement" recovery plans for listed species, *id*. § 1533(f); authorize the Service to acquire land for the protection of listed species, *id*. § 1534; and authorize the Service to make federal funds available to states to assist in the conservation of endangered and threatened species, *id*. § 1535(d).

18. The ESA defines a "species" as "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16). A species is "endangered" when it "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A species is "threatened" when it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

19. The ESA requires the Service to determine whether any species is endangered or threatened based on:

a. the present or threatened destruction, modification, or curtailment of its habitat or range;
b. overutilization for commercial, recreational, scientific, or educational purposes;
c. disease or predation;
d. the inadequacy of existing regulatory mechanisms; or
e. other natural or manmade factors affecting its continued existence.

*Id.* § 1533(a)(1).

20. To ensure species at risk are protected in a timely manner, Congress allowed a petition process whereby an interested party may petition the Service to list a species as threatened or endangered. *Id.* § 1533(b)(3). Once a citizen petition has been filed, the Service is subject to non-discretionary deadlines that require it to publish up to three decisions. These decisions are known as the 90-day finding, the 12-month finding, and the final listing decision.

21. First, within 90 days of receipt of a listing petition, the Service must, "[t]o the maximum extent practicable," publish an initial finding "as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id*. § 1533(b)(3)(A). This is known as the '90-day finding.' If the Service finds in the 90-day finding that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected and the process concludes. If the Service determines that a petition presents substantial information indicating that listing "may be warranted," *id*., the agency must publish that finding and proceed with a scientific review of the species' status, known as a "status review."

22. Upon completing the status review, and within 12 months of receiving the petition, the Service must issue its second decision, a "12-month finding" with one of three listing determinations: (1) listing is "not warranted"; (2) listing is "warranted"; or (3) listing is "warranted but precluded" by other proposals for listing species, provided certain circumstances are met. *Id.* § 1533(b)(3)(B).

23. Should the Service determine listing is warranted and not precluded by other listings, it must publish that finding in the Federal Register along with the text of a proposed regulation to list the species as endangered or threatened and to designate critical habitat for the species, which begins a public comment period. *Id.* § 1533(a)(3)(A), (b)(3)(B)(ii).

24. Once the Service publishes a proposed listing regulation, the ESA generally requires the Service, within one year, to publish a final regulation or withdraw the proposed regulation and state the reasons for its reversal. *Id.* § 1533(b)(6)(A).

25. The Service may extend that one-year period for no more than six months only if it

finds "substantial disagreement regarding the sufficiency or accuracy of the available data relevant to the determination or revision concerned" and publishes notice of the extension in the Federal Register. *Id.* § 1533(b)(6)(B)(i).

## FACTUAL BACKGROUND

*I. The Regal Fritillary*

26. The regal fritillary (*Speyeria idalia)* is a large, black-and-orange butterfly that used to be abundant in tall-grass prairies across 32 states, yet the species is now found only in pockets of degraded habitat in 15 states. The Service highlighted the former abundance of the regal fritillary in their Species Status Assessment, stating, "Historically, populations of the regal fritillary functioned on a vast scale and were abundant and broadly (albeit patchily) distributed…likely millions of individuals occupied the North American prairies prior to establishment of European agriculture." South Dakota Ecological Services Field Office, Fish and Wildlife Service, Species Status Report for Regal Fritillary, 131 (2023).

27. Estimated to historically number in the millions, habitat loss and fragmentation, widespread pesticide use, and climate change have led to a sharp decline in regal fritillary populations, and the species is now at risk of extinction. Their decline mirrors the loss of American prairies, which once spanned an estimated 400 million acres. Now, largely as a result of conversion to agriculture, the extent of native prairies has been reduced by as much as 99%, with the most severe decline being seen in the regal fritillary's preferred habitat, the tall-grass prairie.

28. The western regal fritillary subspecies is now found in only 21 distinct populations, isolated within fragmented prairie remnants across 14 states. Of the western regal fritillary's 21 populations, 10 are considered to have low resiliency, meaning they are less likely to survive

disturbances or harmful events. Another population is considered effectively extirpated. With a moderate increase in stressors, the Service estimates that 11 populations would decline in resilience, some to very low levels. Meanwhile, a significant projected increase in stressors would result in ten of these populations becoming entirely extirpated, while another seven would have very low resiliency.

29. The eastern subspecies of the regal fritillary is limited to just one population, located within the Fort Indiantown Gap National Guard Training Center (FITG) in Pennsylvania. The singular population is especially vulnerable to encroachment by woody species and, as an isolated population, has low resilience to change.



30. Regal fritillaries' entire life cycle occurs over the course of a single year, and each life stage depends on specific conditions. The year begins in late summer or early fall, when females lay eggs that hatch into larvae, which spend the entire winter in a dormant state. When spring begins, these larvae reemerge to seek their only food source, violets. The violets sustain the larvae until early summer, when the regal fritillary seeks shelter in warm-season grass litter to pupate into adults. The adult butterflies then depend on nectar and can travel up to 100 miles to find suitable habitat with access to nectar and the grasses that the next generation will require.

31. The lifecycle of the fritillary, therefore, is dependent on the availability of violets for the larvae, leaf litter that remains undisturbed for their pupation, and sufficient nectar sources to sustain adult members of the species. The species also requires warm-season native bunchgrass throughout its lifecycle, as the bunchgrass is its primary source of shelter. Because of these requirements, the regal fritillary is considered a grassland specialist.

32. The violets and nectar-producing flowers the regal fritillary requires are most commonly found in tall-grass prairies. The species requires access to large, well-connected, diverse grasslands, a habitat that is dwindling. While native grasslands once spanned a significant portion of the United States, the habitat is now far less common due to encroachment by forests, conversion to agriculture, widespread use of herbicides, the invasion of invasive grass species, and more frequent and severe droughts caused by climate change.

33. Tall-grass prairies require a careful balance of periodic beneficial disturbances, without these disturbances becoming too frequent or severe. To prevent the encroachment of woody species or invasive grasses, periodic disturbance is necessary to sustain prairies. These disturbances can take the form of prescribed burns, mowing, or brush removal. A disturbance is

beneficial if properly timed and managed, but causes significant harm to the regal fritillary if too severe, ill-timed, or if the fritillary lacks connected habitat that they can flee to. Because regal fritillary populations have become fragmented and isolated, even necessary disturbances can be harmful, as the butterfly has no adjacent habitat to seek refuge in during such events.

34. The regal fritillary also plays an integral role in the grassland ecosystem, acting as a pollinator and key indicator species. Regal fritillaries can thrive only in diverse, connected grasslands, and management techniques that support their population growth also support the health of native grasslands. Likewise, encouraging the proliferation of native pollinators, in turn, promotes healthy grassland ecosystems.

35. Droughts, particularly in the drier more western regions, present a serious threat, as they limit the growing season for nectar-producing plants and adult regal fritillaries need a constant supply of nectar. With more frequent droughts, adult fritillaries are less likely to survive and tend to have lower reproductive success. While states further to the east of the regal fritillary's range may be better suited to the species' climate needs, they also contain far fewer connected grasslands for the butterfly to utilize.

*II. Listing Petition and Response*

36. The Service first recognized the threats facing the regal fritillary in 1984, when the species was designated as a category 2 candidate for listing as endangered or threatened. 49 Fed. Reg. 21664 (May 2, 1984). This designation ended on February 28, 1996. 61 Fed. Reg. 7596 (Feb. 28, 1996).

37. On April 19, 2013, Guardians petitioned the Service to list both subspecies of the regal fritillary under the ESA. Over ten years ago, on September 18, 2015, the Service published a

positive 90-day finding in the Federal Register, stating that listing may be warranted. 80 Fed. Reg. 56423 (Sept. 18, 2015).

38. On August 6, 2024, the Service published a proposed rule to list the eastern regal Fritillary as endangered and the western regal fritillary as threatened with a species-specific Section 4(d) Rule. Proposed Listing Rule for the Regal Fritillary. The Service determined that federal listing for both subspecies of regal fritillary was warranted primarily due to habitat loss and fragmentation, as well as habitat encroachment by invasive plants and woody species, the reduction in violets and nectar sources from the overapplication of herbicides and overly disruptive disturbances, with each threat exacerbated by the ongoing and projected impacts of climate change and drought. Proposed Listing Rule for the Regal Fritillary, 63889. The final rule implementing the Service's determination was due August 6, 2025.

39. More than thirteen years have passed since Guardians petitioned to list the regal fritillary, more than two years have passed since the Service itself determined that listing both subspecies was warranted and proposed federal protections, and more than one year has passed since the statutory deadline for the Service to complete that rulemaking. In the absence of critical ESA protections, habitat loss, fragmentation and degradation have worsened during this time period, resulting in further population declines for this ecologically valuable native pollinator.

40. Guardians urged Defendants to remedy their ESA violation and avoid litigation in their letter dated June 11, 2026. Yet Defendants have continued to violate the ESA by failing to issue the statutorily required final listing determination for the regal fritillary. 16 U.S.C. § 1533(b)(6)(A).

## CLAIM FOR RELIEF

### Violation of the ESA for Failure to Issue a Timely Final Listing Rule for the Regal fritillary

41. Plaintiff re-alleges and incorporates all allegations set forth in the preceding paragraphs.

42. With limited exceptions not relevant here, when the Service publishes a proposed rule to list a species as endangered or threatened, the ESA requires the agency to publish a final listing determination within 12 months of the proposal's publication. 16 U.S.C. § 1533(b)(6)(A).

43. Because the Service published its proposed listing rule on August 6, 2024, the final listing determination was due August 6, 2025.

44. Defendants have not made the statutorily required final determination for the regal fritillary.

45. Defendants' failure to publish a final listing determination by the statutory deadline constitutes a failure to perform an act or duty that is not discretionary with the Secretary, in violation of ESA § 4(b)(6)(A), 16 U.S.C. § 1533(b)(6)(A), and is actionable under ESA § 11(g)(1)(C), *id*. § 1540(g)(1)(C).

## REQUEST FOR RELIEF

WHEREFORE, Guardians respectfully requests that the Court enter judgment providing the following relief:

1. Declare that the Service violated the ESA by failing to issue a timely final listing determination for the regal fritillary;

2. Provide injunctive relief compelling the Service to publish the final listing determination required by the ESA by a date certain;

3. Retain continuing jurisdiction to review the Service's compliance with all judgments and orders issued in this case;

4. Grant Guardians its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

5. Provide such other relief as the Court deems just and proper.

Respectfully submitted September 15, 2026.

Jennifer Schwartz, Bar No. OR072978
Managing and Senior Attorney
WildEarth Guardians
213 SW Ash St. Suite 202
Portland, OR 97204
Phone: (503) 780-8281
jschwartz@wildearthguardians.org